UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X

JAMES CHRISTOPHER KING,

                                    Plaintiff,

v.                                                                      **MEMORANDUM OPINION
                                                                        AND ORDER**

DR. SHINDER, DR. ZACHARIAH, NURSE                    16-cv-06315 (PMH)
ADMIN. J. PETRANKER, and NP. E.
HANDLER,

                                    Defendants.
----------------------------------------------------------X

PHILIP M. HALPERN, United States District Judge:

        Plaintiff James Christopher King ("Plaintiff"), proceeding *pro se* and *in forma pauperis*,

brings this action under 42 U.S.C. § 1983 alleging defendants were deliberately indifferent to his

serious medical needs in violation of his Fourteenth Amendment rights. On December 11, 2018,

the Court (Briccetti, J.) dismissed all of Plaintiff's claims except for Plaintiff's one remaining

claim against Defendants Dr. Shinder ("Shinder"), Dr. Zachariah ("Zachariah"), Nurse Admin.

Petranker ("Petranker"), and NP Handler ("Handler" and collectively "Defendants") alleging that

Defendants failed to provide adequate medical treatment for, and were deliberately indifferent to,

Plaintiff's hearing loss. (Doc. 189, Op. & Order at 25).

        By motions dated January 30, and January 31, 2020, Defendants move for summary

judgment pursuant to Fed. R. Civ. P. 56. (Docs. 215, 223).[1] On March 17, 2020, this matter was

reassigned to me. For the reasons set forth below the court GRANTS Defendants' motions for

summary judgment and dismisses Plaintiff's claims.

---

[1] While Handler moves for summary judgment (*see* Doc. 215) separately from Shinder, Zachariah, and
Petranker (*see* Doc. 223), the Defendants' arguments and undisputed factual allegations largely overlap.
Accordingly, the Court analyzes the Defendants' motions for summary judgment together.

## BACKGROUND

Judge Briccetti's earlier decision described the allegations and procedural history of this case, *see* Op. & Order at 3–9, and familiarity with it is therefore assumed. The facts, as recited below, are taken from Defendants' Local Rule 56.1 statements, (Doc. 219, "Handler 56.1"; Doc. 230, "Petranker 56.1"), Plaintiff's Second Amended Complaint, (Doc. 73, "SAC"), Plaintiff's opposition brief,[2] (Doc. 236, "Pl. Opp'n"), and the admissible evidence submitted by the parties.

Plaintiff was arrested on December 1, 2015 and, during the arrest, Plaintiff alleges he was punched, kicked, and tasered by numerous police officers. Petranker 56.1 ¶ 18 (Decl. of Robert B. Weissman ("Weissman Decl.") Ex. C ("Pl. Dep.") at 39:1–22). After the arrest, Plaintiff was taken to the emergency room at Good Samaritan Hospital ("GSH") where he was treated for severe pain and prescribed pain medication. Pl. Dep. at 43:13–44:7. At GSH, Plaintiff was diagnosed with a concussion, given medication to treat his pain, and told to schedule an appointment as soon as possible with neurologist Lyle James Dennis. Petranker 56.1 ¶ 21 (citing Decl. of Jill Bernstein

---

[2] Plaintiff did not submit a Rule 56.1 statement. While "*pro se* litigants are [] not excused from meeting the requirements of Local Rule 56.1 . . . where a *pro se* plaintiff fails to submit a proper Rule 56.1 statement in opposition to a summary judgment motion, the Court retains some discretion to consider the substance of the plaintiff's arguments, where actually supported by evidentiary submissions." *Wali v. One Source Co*., 678 F. Supp. 2d 170, 178 (S.D.N.Y. 2009); *see also Gadson v. Goord*, No. 96-CV-7544, 2000 WL 328879, at *3 (S.D.N.Y. Mar. 28, 2000) ("Plaintiff did not submit a Statement Pursuant to Civil Rule 56.1. Instead, he submitted 'Plaintiff's Opposition for Defendant's Memorandum of Law in Support of Motion for Summary Judgment,' stating his disagreement with the defendant's version of the facts. In light of plaintiff's *pro se* status, the Court will accept this memorandum in lieu of a Rule 56.1 Statement."). Plaintiff submitted opposition briefs to Defendants' motions for summary judgment supported by evidence appended thereto. *See generally* Pl. Opp'n. While not fully responsive to Defendants' Rule 56.1 statements by any means, the Court will consider the factual assertions made by Plaintiff in his two memoranda of law in opposition to Defendants' motions for summary judgment as opposition to Defendants' Rule 56.1 statements. The Court is aware that bald and conclusory factual statements contained therein do not constitute opposition to Defendants' Rule 56.1 statements. *See Woods v. Acampora*, No. 08-CV-4854, 2009 WL 1835881, at *3 (S.D.N.Y. June 24, 2009) ("[A] *pro se* party's 'bald assertion' completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment." (quoting *Odom v. Keane,* 1997 WL 576088, at *3 (S.D.N.Y. Sept.17, 1997))).

("Bernstein Decl.") Ex. B at 9,[3] 17). Plaintiff did not complain specifically about hearing loss to medical professionals at GSH. *Id.* ¶ 22 (citing Bernstein Decl. ¶ 10).

Plaintiff was then transported to the Rockland County Correctional Facility (the "Jail") on December 2, 2015 where he remained incarcerated until December 2, 2016. Petranker 56.1 ¶ 23 (citing SAC ¶ 228; Pl. Dep. at 103:11–14). Plaintiff was a pre-trial detainee until he was convicted on November 29, 2016. *Id.* ¶ 24 (citing Pl. Dep. at 16:21–22).

**I.    Plaintiff's Medical Treatment Related to His Hearing Loss**

Upon being admitted to the Jail, Plaintiff was screened and examined by two nurses. *Id.* ¶ 26. Plaintiff's intake form notes that he complained of a headache, but it does not indicate that he complained of decreased hearing. *Id.* ¶¶ 28, 31 (citing Bernstein Decl. ¶¶ 14–15; *Id.* Ex. C at 12). On December 3, 2015, Zachariah examined Plaintiff after it was reported that Plaintiff suffered a seizure and had lost consciousness. *Id.* ¶ 33 (citing Doc. 225 ("Zachariah Decl.") ¶¶ 5, 7). Zachariah referred Plaintiff to Nyack Hospital where he underwent a CT scan of his brain and was told that he "ha[s] a head injury which does not appear serious at this time" and was diagnosed with a concussion with loss of consciousness. *Id.* ¶¶ 34–36 (citing Bernstein Decl. Ex. C at 68–70); *Id.* ¶ 37 (citing Bernstein Decl. Ex. D at 10). Plaintiff's discharge notice from Nyack Hospital referred Plaintiff to Marc London, a neurologist, "for recheck and further evaluation." *Id.* ¶ 38 (citing Bernstein Decl. Ex. C at 74). After Plaintiff returned to the Jail on December 3, 2015, Zachariah noted that he would continue to monitor Plaintiff, and Jail medical staff reached out to Marc London to attempt to schedule a neurological examination. *Id.* ¶¶ 40–41 (citing Zachariah Decl. ¶¶ 9–10); *Id.* ¶ 43 (citing Bernstein Decl. Ex. C at 64).

---

[3] Page numbers for Bernstein Decl. Exs. B–F correspond to the page numbers assigned by PACER.

On December 4, 2015, Plaintiff had a mental health evaluation; the evaluation sheet does not identify any complaints of hearing loss. *Id.* ¶ 45 (citing Bernstein Decl. ¶ 24).

On December 5, 2015, Plaintiff had a psychiatric assessment. *Id.* ¶ 49 (citing Zachariah Decl. ¶ 17). The examiner wrote that Plaintiff stated he has "clogs in his ear [with] earaches" and he was "[treated] for ear infection." *Id.* (citing Bernstein Decl. Ex. C at 35).

On December 7, 2015, Zachariah conducted a physical examination of Plaintiff. *Id.* ¶ 47 (citing Zachariah Decl. ¶ 18). Zachariah did not have access to the psychiatric assessment notes prior to the examination. *Id.* ¶ 48 (citing Zachariah Decl. ¶ 18). During the examination, Plaintiff did not report hearing difficulty, but Zachariah nonetheless checked Plaintiff's ears and noted that Plaintiff's "Ears: canals, drums, hearing (whispered voice)" were "normal." *Id.* ¶¶ 49, 51 (citing Bernstein Decl. C at 14). To conduct a whispered voice hearing test, Zachariah stood five feet from the patient, whispered a number, and asked Plaintiff to repeat the number. *Id.* ¶ 53 (citing Zachariah Decl. ¶ 19).

On December 10, 2015, Plaintiff submitted a Sick Call Request noting that he "can't feel [his] feet." *Id.* ¶ 61 (citing Bernstein Decl. Ex. C at 51). After the request was received, Plaintiff was notified that he should report to the Jail's medical clinic on December 14, 2020. *Id.* ¶ 64 (citing Zachariah Decl. ¶ 26). On December 14, 2015, Plaintiff did not report to the Jail's clinic and Zachariah noted "Patient refused to come to clinic on 12/14/15." *Id.* ¶¶ 65–66 (citing Bernstein Decl. Ex. C at 51). Zachariah had no further involvement in Plaintiff's medical care. *Id.* ¶ 70 (citing Zachariah Decl. ¶ 3).

On December 20, 2015, Plaintiff submitted a Sick Call Request noting that "Ear is hurt[] badle [sic]." *Id.* ¶ 71 (citing Bernstein Decl. Ex. C at 50). Nurse Emma Mahabir saw Plaintiff and

noted that she "Gave 2 Tylenol" and that Plaintiff "wanted to see MD for further eval[uation]." *Id.* ¶ 72 (citing Bernstein Decl. Ex. C at 50).

On December 27, 2015, Plaintiff submitted a Sick Call Request noting "cannot hear out of my left ear. Also no feeling in my feet are [sic] my hands. Also have very bad heartburn." *Id.* ¶ 73 (citing Bernstein Decl. Ex. C at 49). Two days later, Plaintiff was examined by Dr. Costley who noted that Plaintiff complained of decreased hearing in his left ear, but that Plaintiff's eardrums appeared normal. *Id.* ¶¶ 76–78 (citing Bernstein Decl. Ex. C at 28).

On January 1, 2016, Shinder examined Plaintiff and noted that Plaintiff stated that since December 2, 2015 the hearing in his left ear had been decreasing and he had been experiencing headaches and earaches. *Id.* ¶ 81 (citing Doc. 226 "Shinder Decl." ¶ 4). After examining Plaintiff, Shinder noted that the hearing in Plaintiff's right ear was "OK," Plaintiff's ears were "OK," and concluded that Plaintiff has "questionable decreased hearing." *Id*. ¶¶ 83–85 (citing Shinder Decl. ¶ 6).

On January 10, 2016, Plaintiff submitted a Sick Call Request noting: "My ear and head is hurting really badly." *Id.* ¶ 86 (citing Bernstein Decl. Ex. C at 48). Shinder examined Plaintiff on January 12, 2016. *Id.* ¶ 88 (citing Shinder Decl. ¶ 11). During the examination, Plaintiff told Shinder he was "hearing a little better." *Id.* ¶ 90 (citing Shinder Decl. ¶ 11). Petranker was also present during Plaintiff's January 12, 2016 examination. *Id*. ¶ 113 (citing Doc. 227 ("Petranker Decl.") at 11). Plaintiff remembers Petranker stating that Plaintiff did not need to see a neurologist. Pl. Dep. 51:23–52:4. Petranker denies she made such a statement, but, in any event, Shinder believed that Plaintiff should see a neurologist and referred Plaintiff to the Westchester Medical Center clinic. Petranker 56.1 ¶¶ 114–15 (citing Petranker Decl. ¶ 11).

On January 14, 2016, Shinder examined Plaintiff again. *Id.* ¶ 94 (citing Shinder Decl. ¶ 15). During this examination, Plaintiff did not complain about his hearing. *Id.* ¶ 95 (Shinder Decl. ¶ 15).

On January 15, 2016, Plaintiff submitted a Sick Call Request noting "Head is hurt badly. Need to go outside to see outside doctor regarding this issue." *Id.* ¶ 96 (citing Bernstein Decl. Ex. C at 46). Shinder examined Plaintiff on January 19, 2016. *Id.* ¶ 99 (citing Bernstein Decl. Ex. C at 30). Plaintiff did not complain about his ears or hearing during the examination and Shinder did not make any notes related to Plaintiff's ears or his hearing. *Id.* ¶¶ 99–101 (citing Bernstein Decl. Ex. C at 30).

On January 25, 2016, and as a result of Shinder's January 10, 2016 referral, Plaintiff was examined by a neurologist at Westchester Medical Center. *Id.* ¶ 102 (citing Bernstein Decl. Ex. C at 55). Plaintiff's Westchester Medical chart does not reflect any complaints about Plaintiff's hearing and notes "[patient] deaf or difficulty hearing? No." *Id.* ¶¶ 103–05 (citing Bernstein Decl. Ex. E at 12).

On January 28, 2016, Shinder prescribed Plaintiff medication for his continuing headaches. *Id.* ¶ 108 (citing Shinder Decl. ¶ 24). Thereafter, Shinder had no further involvement in Plaintiff's medical care. *Id.* ¶ 110 (citing Shinder Decl. ¶ 26).

On September 6, 2016, Plaintiff submitted a Sick Call Request and Plaintiff was evaluated by Handler who determined that Plaintiff had an ear infection in his right ear. Handler 56.1 ¶ 8 (citing Pl. Dep. at 98:18–100:1). Plaintiff informed Handler that he had been using a pencil and tissue paper to clean his ears and Handler advised Plaintiff not to stick foreign objects in his ear. *Id.* (citing Bernstein Decl. Ex. C at 32). Plaintiff states that he was examined by Handler "several times," but does not provide any evidence of other examinations by Handler. *See* Pl. Opp'n at 12.

6

On December 14, 2016, Plaintiff went for an auditory examination at Downstate Correctional Facility. Petranker 56.1 ¶ 116 (citing Bernstein Decl. Ex. F at 2). Plaintiff's right ear was assessed as possessing "mild sensorineural hearing loss" while his left ear was measured as "within normal limits." *Id.* ¶ 117 (citing Bernstein Decl ¶ 59). Plaintiff's overall hearing loss was assessed as "HL30 (hearing loss/non-significant)." *Id.* ¶ 118 (citing Bernstein Decl. Ex. F at 2).

Plaintiff was later transferred to the Adirondack Correctional Facility, and, on March 1, 2017, Plaintiff wrote a letter to Dr. Canfield regarding his hearing issues. *Id.* ¶¶ 119–20 (citing Bernstein Decl. Ex. G). Plaintiff states in the letter that he saw a doctor around February 24, 2017 and the doctor reported that Plaintiff "ha[s] a mild hearing los[s] in [his] right ear, and that [his] levels must be a little lower to receive a hearing aid." *Id.* ¶ 121 (citing Bernstein Decl. Ex. G). Plaintiff also stated in the letter that he "can hear a person close up face to face when they talking to me, but when they are more [than] 20 feet away from me I cannot hear them at all, and when there are other people are [sic] speaking [I] cannot hear anything." Bernstein Decl. Ex. G. Plaintiff requested Dr. Canfield give him a hearing aid. *Id.*

Between August 15, 2017 and August 7, 2018, Plaintiff's hearing was tested four additional times. Petranker 56.1 ¶¶ 125–33. Test results consistently showed that Plaintiff has mild hearing loss in his right ear and that the hearing in his left ear was within normal limits. *Id.*

Based on a review of medical records related to Plaintiff's hearing, Jill Bernstein, Defendants' expert and a board-certified audiologist, found that "[a]udiological testing established that Plaintiff had insignificant hearing loss in one ear and the other [ear] was within normal limits" and that "Plaintiff did not have a significant hearing deficit requiring a hearing aid device." Bernstein Decl. ¶ 6. Bernstein concluded that "Plaintiff's hearing complaints cannot be addressed by a hearing aid." Petranker 56.1 ¶ 137 (citing Bernstein Decl. Ex. H). Bernstein found also that

Plaintiff's auditory examinations "suggest[] there is a strong possibility that [Plaintiff] was intentionally exaggerating his hearing difficulty" and that this "may have been an attempt to display a hearing loss that meets hearing aid qualifications." Bernstein Decl. Ex. H.

## II.   Plaintiff's History Filing Grievances

On December 2, 2015, the Jail provided Plaintiff with a handbook of inmate rules and regulations, which provides instructions on what procedures an inmate must follow to file a grievance. Petranker 56.1 ¶¶ 138–39 (citing Doc. 228 ("Byron Decl.") Ex. B at 20). On January 12, 2016, Plaintiff filed a grievance related to the Jail's failure to schedule an appointment for Plaintiff with a neurologist. *Id.* ¶ 142 (citing Byron Decl. Ex. A at 6[4]). Specifically, regarding the action requested by Plaintiff, he stated "[t]o go to a neurologist[] so I can find out what wrong [sic] with my body." Byron Decl. Ex. A at 6. Plaintiff also stated in his grievance that he "can't hear anything in my left ear at all." Petranker 56.1 ¶ 143 (citing Byron Decl. Ex. A at 6). Lt. Byron investigated Plaintiff's grievance, and, after learning that a neurology appointment had been scheduled, Lt. Byron denied Plaintiff's grievance. *Id.* ¶¶ 145–49 (citing Byron Decl. Ex. A at 4). Plaintiff appealed the denial of the grievance. *Id.* ¶ 150 (citing Byron Decl. Ex. A at 2). Plaintiff's grievance was sustained by Chief Anthony Volpe who stated "[t]he facility medical department scheduled an appointment for the grievant to be seen by a neurologist. The date and time of that appointment will not be given to the grievant due to security concerns." *Id.* ¶ 151 (citing Byron Decl. Ex. A at 3). Plaintiff did not thereafter indicate whether he wished to further appeal the grievance to the New York State of Corrections Citizen's Policy and Complaint Review Counsel. *Id.* ¶ 152 (citing Byron Decl. ¶ 15). As such, the grievance was deemed abandoned and marked "denied." *Id.* ¶ 153 (citing Byron Decl. ¶ 153). Plaintiff claims that the Jail "did not address all of

---

[4] Page numbers for Byron Decl. Ex. A correspond to the page numbers assigned by PACER.

the issues raised in Plaintiff's [January 12, 2016] grievance," but does not indicate what was not addressed. Pl. Opp'n at 6.[5]

Plaintiff produced to Defendants during discovery a second grievance form dated February 20, 2016. Petranker 56.1 ¶ 155 (citing Byron Decl. Ex. C). According to Defendants, the grievance form was never received by Jail staff and Defendants believe that the February 20, 2016 grievance is not genuine as it appears that the Plaintiff's inserted grievance was written over an unrelated grievance form as apparently evidenced by the faded and illegible writing of the earlier grievance. *Id.* ¶ 157 (citing Byron Decl. ¶ 19). Plaintiff states in this February 20, 2016 grievance that his "ear is hurting," that he "need[s] to see ear doctor," and that "[he] need[s] to see ear [sic] for my hearing impaired ear." Byron Decl. Ex. C. Plaintiff asserts that the February 20, 2016 grievance was properly filed and that video footage, which was allegedly requested but not disclosed in discovery, would show that the grievance was picked up by an officer collecting mail in the intake housing unit. Pl. Opp'n at 6–7.

## STANDARD OF REVIEW

Pursuant to Fed. R. Civ. P. 56, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' if it 'might affect the outcome of the suit under the governing law,' and is genuinely in dispute 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Liverpool v. Davis*, No. 17-CV-3875, 2020 WL 917294, at *4 (S.D.N.Y. Feb. 26, 2020) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "'Factual disputes that are irrelevant or unnecessary' are not material and thus cannot preclude summary judgment." *Sood v. Rampersaud*, No. 12-CV-5486, 2013 WL 1681261, at *1

---

[5] Plaintiff has combined his two opposition briefs and exhibits into a single filing. Accordingly, the page numbers correlate to the page numbers assigned by PACER.

(S.D.N.Y. Apr. 17, 2013) (quoting *Anderson*, 477 U.S. at 248). The Court's duty, when determining whether summary judgment is appropriate, is "not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Id.* (quoting *Wilson v. Nw. Mut. Ins. Co.,* 625 F.3d 54, 60 (2d Cir. 2010)). The task is material issue spotting not material issue determining. Therefore, "where there is an absence of sufficient proof as to one essential element of a claim, any factual disputes with respect to other elements of the claim are immaterial." *Bellotto v. Cty. of Orange*, 248 F. App'x 232, 234 (2d Cir. 2007) (quoting *Salahuddin v. Goord,* 467 F.3d 263, 281 (2d Cir. 2006)).

"It is the movant's burden to show that no genuine factual dispute exists." *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157 (1970)).  The Court must "resolve all ambiguities and draw all reasonable inferences in the non-movant's favor." *Id.* (citing *Giannullo v. City of N.Y.,* 322 F.3d 139, 140 (2d Cir. 2003)). Once the movant has met its burden, the non-movant "must come forward with specific facts showing that there is a genuine issue for trial." *Liverpool*, 2020 WL 917294, at * 4 (quoting *Matsushita Elec. Indus. Co.* v. *Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). The non-movant cannot defeat a summary judgment motion by relying on "mere speculation or conjecture as to the true nature of the facts." *Id.* (quoting *Knight* v. *U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986)).  However, if "there is any evidence from which a reasonable inference could be drawn in favor of the opposing party on the issue on which summary judgment is sought, summary judgment is improper." *Sood*, 2013 WL 1681261, at *2 (citing *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc.,* 391 F.3d 77, 83 (2d Cir. 2004)).

Should there be no genuine issue of material fact, the movant must also establish its entitlement to judgment as a matter of law. Simply put, movant must establish that the law favors

the judgment sought. *See Glover v. Austin*, 289 F. App'x 430, 431 (2d Cir. 2008) ("Summary judgment is appropriate if, but only if, there are no genuine issues of material fact supporting an essential element of the plaintiffs' claim for relief."); *Pimentel v. City of New York*, 74 F. App'x 146, 148 (2d Cir. 2003) (holding that because plaintiff "failed to raise an issue of material fact with respect to an essential element of her[] claim, the District Court properly granted summary judgment dismissing that claim.").

## ANALYSIS

Plaintiff's sole remaining claim, brought pursuant to 42 U.S.C. § 1983, alleges that Jail officials failed to provide adequate medical care and were deliberately indifferent to Plaintiff's serious medical needs (i.e. his hearing loss). *See* Op. & Order at 25. Defendants seek summary judgment and dismissal of Plaintiff's claim because there are no factual issues in dispute and no evidence in the record that would permit a reasonable fact finder to conclude that Plaintiff can satisfy the requirements for a deliberate indifference claim under the Fourteenth Amendment. Because the Court finds that there is no genuine issue of fact in dispute regarding whether Plaintiff can satisfy the objective prong of his Fourteenth Amendment deliberate indifference claim, and the Court finds that Defendants are entitled to judgment as a matter of law, Defendants' summary judgment motions are granted.[6]

At the time of the alleged misconduct, Plaintiff was a pretrial detainee. Petranker 56.1 ¶ 24 (noting that Plaintiff was a pretrial detainee at the Jail from December 2, 2015 until November 29, 2016). "A pretrial detainee's claims of unconstitutional conditions of confinement are governed

---

[6] Defendants argue also that Plaintiff failed to exhaust his administrative remedies under the Prison Litigation Reform Act ("PLRA") and seek summary judgment on that basis. Because the Court finds that Plaintiff's Fourteenth Amendment claim fails as a matter of law, the Court does not address whether Plaintiff properly exhausted his administrative remedies under the PLRA as it is superfluous to the Court's ultimate conclusion that Plaintiff did not suffer a constitutional violation.

by the Due Process Clause of the Fourteenth Amendment." *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017) (citing *Benjamin v. Fraser*, 343 F.3d 35, 49 (2d Cir. 2003)). Jail officials may be found liable for violating a pretrial detainees' due process rights "if the official denied treatment needed to remedy a serious medical condition and did so because of his deliberate indifference to that need." *Boomer v. Lanigan*, No. 00-CV-5540, 2002 WL 31413804, at *6 (S.D.N.Y. Oct. 25, 2002) (quoting *Weyant v. Okst,* 101 F.3d 845, 856 (2d Cir. 1996)); *see also Adamson v. Miller*, 808 F. App'x 14, 18 (2d Cir. 2020) (holding that, to prevail on a Fourteenth Amendment deliberate indifference claim, a plaintiff must prove "(1) that the alleged deprivation [of medical treatment] 'pose[d] an unreasonable risk of serious damage to his health,' and (2) 'that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed.'" (quoting *Darnell*, 849 F.3d at 30, 35.)). Thus, to prevail on a Fourteenth Amendment claim alleging inadequate medical care, a plaintiff must prove an objective prong and a subjective prong.

As to the objective prong, a plaintiff must demonstrate that "the inadequacy in medical care is sufficiently serious." *Salahuddin*, 467 F.3d at 280. "If the unreasonable medical care is a failure to provide any treatment for an inmate's medical condition, courts examine whether the inmate's medical condition is sufficiently serious." *Id.* (citing *Smith v. Carpenter,* 316 F.3d 178, 185–86 (2d Cir. 2003)). While there is no "precise metric" to determine whether a prisoner's medical needs are sufficiently serious, the Second Circuit's standard "contemplates a condition of urgency that may result in degeneration or extreme pain." *Bellotto,* 248 F. App'x at 234 (quoting *Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir. 1998) (internal citations omitted)). The Court, when determining whether a condition is sufficiently serious "considers all relevant facts and circumstances, including whether a reasonable doctor or patient would consider the injury

worthy of treatment; the impact of the ailment upon an individual's daily activities; and, the severity and persistence of pain." *Chavis v. vonHagn*, No. 02-CV-0119, 2009 WL 236060, at \*43 (W.D.N.Y. Jan. 30, 2009) (citing *Chance*, 143 F.3d at 702). If, alternatively, the plaintiff alleges that "the inadequacy is in the medical treatment given, the seriousness inquiry is narrower." *Salahuddin*, 467 F.3d at 280. For example, if "the prisoner is receiving on-going treatment and the offending conduct is an unreasonable delay or interruption in that treatment, the seriousness inquiry 'focus[es] on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone.'" *Id.* (quoting *Carpenter,* 316 F.3d at 185).

Here, Plaintiff alleges that Defendants did not "timely treat[]" his "loss of hearing." SAC ¶¶ 1–2; *see also id.* ¶ 378 ("Plaintiff's rights were violated pursuant to the . . . Fourteenth Amendment in that he was delayed and denied adequate timely medical care."). Therefore, the Court's seriousness inquiry focuses not only on the seriousness of Plaintiff's hearing loss, but also the seriousness of any lack in treatment provided to Plaintiff.

Plaintiff's Fourteenth Amendment claim fails at the first step of this inquiry as there is no genuine material fact in dispute regarding Plaintiff's hearing ability and no evidence in the record establishing that Plaintiff's hearing loss was sufficiently serious so that the failure to treat the hearing loss rises to the level of a constitutional violation. Simply stated, Plaintiff does not have a "serious medical need" concerning his hearing and therefore no constitutional violation can lie for failure to treat Plaintiff's hearing loss. Indeed, the facts show that Plaintiff's moderate hearing loss was consistently and repeatedly treated over a two-and-a-half-year period.

The loss of hearing can form the basis of a Fourteenth Amendment due process violation claims because the "ability to hear is 'a basic human need affecting daily activity and sufficiently serious to warrant treatment by physicians.'" *Rennalls v. Alfredo*, No. 12-CV-5300, 2015 WL

5730332, at *11 (S.D.N.Y. Sept. 30, 2015) (quoting *Rosales v. Fischer,* No. 07–CV–10554, 2009 WL 928260, at *12 (S.D.N.Y. Mar. 31, 2009)). However, a plaintiff's hearing loss that is mild or not significant, does not rise to the level of a "serious medical need" and trigger constitutional protections. *See, e.g., Fate v. Goord*, No. 11-CV-7493, 2012 WL 3104884, at *6 (S.D.N.Y. July 31, 2012) (finding that "[w]hile loss of hearing may be sufficiently serious, [plaintiff] has only alleged HL30 non-significant hearing loss" and therefore plaintiff failed to satisfy objective prong of deliberate indifference test); *Smith v. Masterson*, 538 F. Supp. 2d 653, 659 (S.D.N.Y. 2008), *aff'd*, 353 F. App'x 505 (2d Cir. 2009) (granting summary judgment because the "record has established that Smith has normal hearing" and therefore plaintiff failed to satisfy the objective prong of a deliberate indifference claim); *see also Chavis*, 2009 WL 236060, at *43 (W.D.N.Y. Jan. 30, 2009) (finding Plaintiff failed to satisfy the objective prong of Fourteenth Amendment violation because "plaintiff offers nothing more than bald, conclusory allegations that he suffered from an extremely painful ear infection and further, that the ear infection resulted in a temporary (two week) loss of hearing" and granting summary judgment to defendants).

Here, there is no factual dispute regarding Plaintiff's hearing loss. The record establishes that Plaintiff's hearing loss is non-significant and cannot be aided by hearing aids. Plaintiff received an initial auditory examination at Downstate Correctional Facility on December 14, 2016. Petranker 56.1 ¶ 116. The examination revealed that Plaintiff's right ear had "mild sensorineural hearing loss" and the hearing in Plaintiff's left ear was "within normal limits." *Id.* ¶ 117 (citing Bernstein Decl. Ex. F at 12). Overall, Plaintiff's hearing loss was classified as "HL30 (Hearing Loss/Non-Significant)." *Id.* ¶ 118 (Citing Bernstein Decl. Ex. F at 1). On March 1, 2017, after Plaintiff was transferred to the Adirondack Correctional Facility, Plaintiff wrote a letter to a physician at the facility and stated that he saw a doctor "around about 2/24/17 regarding my hearing

issue. The doctor explained to me that I have a mild hearing lost [sic] in my right ear, and that my levels must be a little lower to receive a hearing aid." *Id.* ¶¶ 119–21 (citing Bernstein Decl. Ex. G). On August 15, 2017, Plaintiff was examined by an audiologist at the Clinton Correctional Facility. *Id.* ¶ 125. The audiologist's report notes that the audiologist was unable to obtain a reliable audiogram, but that Plaintiff was able to communicate with the audiologist without issue and had "reliable normal hearing." *Id.* ¶¶ 125–26 (citing Bernstein Decl. Ex. F at 10). At the August 15, 2017 examination, Plaintiff's hearing continued to be classified as "HL30 (Hearing Loss/Non-Significant)." *Id.* ¶ 127 (citing Bernstein Decl. Ex. F at 13). On March 13, 2018, Plaintiff was examined by an audiologist at the Upstate University Health System. *Id.* ¶ 128. The audiologist noted that Plaintiff's speech thresholds were suggestive of mild hearing loss on the right side, and that the hearing in Plaintiff's left ear was within normal limits. *Id.* ¶ 129 (citing Bernstein Decl. Ex. F at 6–8). On May 15, 2018, an audiogram was attempted at Midstate Correctional Facility but, due to inconsistent test results, the audiologist concluded that he could not make a recommendation regarding Plaintiff's hearing. *Id.* ¶¶ 130–31 (citing Bernstein decl. Ex. F at 5). On August 7, 2018, Plaintiff again received an audiogram at Midstate Correctional Facility. *Id.* ¶ 132. Testing revealed "normal hearing sensitivity for the left ear" and "moderate[ly] decreased" hearing in the right ear. *Id.* ¶¶ 132–33 (citing Bernstein Decl. Ex. F at 3).

Based on a review of Plaintiff's medical records, Defendants' expert, Jill Bernstein, a board-certified audiologist, concluded that "Plaintiff did not have a significant hearing deficit requiring a hearing aid device. Audiological testing established that Plaintiff had insignificant hearing loss in one ear and the other was within normal limits." Bernstein Decl. ¶ 6; *see also generally* Bernstein Decl. Ex. H.

Furthermore, it is uncontested that the degree of Plaintiff's hearing does not qualify him for New York State Medicaid hearing aid coverage and, following the State of New York Workers' Compensation Board Record of Percentage Hearing Loss calculation, Plaintiff has a 0% hearing loss in both ears. Bernstein Decl. Ex. H. Finally, during Plaintiff's July 22, 2019 deposition, Plaintiff was not wearing a hearing aid but appeared to understand the questions posed to him by opposing counsel and did not ask for any question to be repeated due to difficulty hearing. Petranker 56.1 ¶ 135 (citing Pl. Dep. at 84, 106-107).

Regarding the objective prong of the deliberate indifference test, in his opposition brief, Plaintiff primarily focuses on the various times in which he complained to prison officials that he had hearing loss. *See* Pl. Opp'n at 10–11, 31–32. Plaintiff does state that when he was first examined by an audiologist in December 2016, he "was told he has permanent hearing loss." *Id.* at 10, 31. Plaintiff does not cite to any evidence in support of this assertion. Plaintiff argues that this establishes "as a matter of law" that he "satisf[ies] the objective prong for his claim for deliberate indifference." *Id.* at 11, 32. Resolving all ambiguities and drawing all reasonable inferences in the non-movant's favor, as the Court must at the summary judgment stage, Plaintiff appears to be referring to the initial auditory examination he received on December 14, 2016 at Downstate Correctional Facility. *See* Petranker 56.1 ¶ 116. This exam revealed that Plaintiff's right ear had mild loss, Plaintiff's left ear was "within normal limits," and Plaintiff's overall hearing loss was classified as "non-significant." *Id.* ¶¶ 117–18 (citing Bernstein Decl. Ex. F at 1, 12). The record reveals that Plaintiff's ears were tested five more times between February 27, 2017 and August 7, 2018. None of these examinations indicate that Plaintiff has serious hearing loss or is in need of a hearing aid.

Plaintiff's assertion that he needs a hearing aid, unsupported by evidence in the record, is insufficient to defeat summary judgment for a deliberate indifference to medical needs claim. *See Scheckells v. Goord*, 423 F. Supp. 2d 342, 347–48 (S.D.N.Y. 2006) (holding that where evidence established that Plaintiff did not suffer from an otherwise serious medical need, "plaintiff's unsupported, layman's claim that the tests must be wrong is not sufficient to raise a material issue of fact." (citing *O'Connor v. Pierson,* 426 F.3d 187, 202 (2d Cir. 2005))); *see also Green v. Senkowski,* 100 Fed. App'x 45 (2d Cir. 2004) (finding that plaintiff's self-diagnosis unsupported by medical evidence, and contrary to the medical evidence on record, was insufficient to defeat summary judgment in a deliberate indifference claim). A plaintiff's mere "[d]isagreement over the proper treatment does not rise to the level of a constitutional violation." *Doe v. Goord*, No. 04-CV-00570, 2006 WL 1041130, at *3 (S.D.N.Y. Apr. 18, 2006). While Plaintiff asserts that his hearing loss should have been treated differently by Jail officials, Plaintiff offers only bald, conclusory statements that the treatment he received was insufficient and offers no expert opinion to rebut the opinion of Defendants' expert that his degree of hearing loss was insufficient to require hearing aids. "[T]he fact that a prisoner might prefer a different treatment does not give rise to [a Fourteenth Amendment] violation." *Chance*, 143 F.3d at 703 (citing *Dean v. Coughlin,* 804 F.2d 207, 215 (2d Cir. 1986)).

There is simply no evidence in the record from which the Court can conclude that there is a factual dispute regarding the severity of Plaintiff's hearing loss. The record establishes that Plaintiff had mild hearing loss in his right ear and no hearing loss in his left ear. The scant documentary proof Plaintiff offers in support of his opposition to Defendants' summary judgment motions are medical records and sick call requests primarily related to medical issues and injuries unrelated the Plaintiff's alleged hearing loss. *See* Pl. Opp'n at 39–47. Plaintiff offers no evidence

to rebut Defendants' assertion that his level of hearing loss is not significant enough to warrant hearing aids or additional treatment.

Plaintiff does not dispute that he received some medical care related to his hearing loss and therefore the Court considers not only the seriousness of Plaintiff's underlying medical condition but the seriousness in any delay in treating the condition. *See Salahuddin*, 467 F.3d at 280. The record reveals that the Defendants had limited involvement in Plaintiff's treatment. Zachariah treated Plaintiff on two occasions: December 3 and 7, 2015. *See* Petranker 56.1 ¶¶ 33, 47. The first time Zachariah treated Plaintiff it was because Plaintiff had lost consciousness. *Id.* ¶ 33. The second time, Zachariah conducted a physical examination during which Plaintiff did not complain about hearing difficulty, and yet, Zachariah nonetheless checked Plaintiff's ears and found them to be "normal." *Id.* ¶¶ 47–54. Shinder treated Plaintiff on four occasions: January 1, 12, 14, and 19, 2016. *Id.* ¶¶ 80, 94. During the January 1, 2016 examination, Shinder checked Plaintiff's ears and noted that they were "OK." *Id.* ¶¶ 82–83. During the January 12, 2016 examination, Plaintiff reported "that his hearing was improving but he was still having headaches." *Id.* ¶¶ 88–89. During the January 14, 2020 examination, Plaintiff did not complain about his hearing. *Id.* ¶¶ 94–95. During the January 19, 2016 examination, Plaintiff again did not complain about his hearing. *Id*. ¶¶ 99–101. Petranker, who is not a treating medical provider at the Jail, was present for Plaintiff's January 12, 2016 examination. *Id.* ¶¶ 15, 113. During this single interaction with Plaintiff, Petranker allegedly stated that Plaintiff did not need to see a neurologist, which was overruled by Shinder, and Plaintiff was seen by a neurologist on January 15, 2016. *Id.* ¶¶ 114–15. Handler examined Plaintiff on one occasion: September 7, 2016. Handler 56.1 ¶ 8. During this examination, Handler treated Plaintiff for a right earache, diagnosed Plaintiff with a middle ear infection, and prescribed Plaintiff medication. *Id.*

Overall, Plaintiff was treated by medical professionals at the Jail or outside facilities for his reported medical conditions at least thirteen times between his admission to the Jail and his transfer to Downstate Correctional Facility. Furthermore, after Plaintiff left the Jail, he was examined by an audiologist on six separate occasions between December 14, 2016 and August 7, 2018. Plaintiff received significant, repeated, and regular medical treatment; and therefore the Court cannot conclude there was any delay—let alone serious delay—in treating Plaintiff's medical needs.

Because there is no factual dispute regarding whether Plaintiff's allegedly untreated hearing loss can be classified as a "serious medical need" and there was no delay in treating Plaintiff's hearing loss, the Court finds, as a matter of law, that Plaintiff cannot satisfy the objective prong of his deliberate indifference claim. No purpose would be served by considering the remaining element of Plaintiff's claim—whether any Defendant acted intentionally or recklessly— as this analysis could not resurrect the fatal and undisputed flaw of Plaintiff's lack of serious medical condition. Accordingly, the Court grants Defendants' motions for summary judgment.

## CONCLUSION

Based on the foregoing, Defendants' motions for summary judgment are GRANTED.

The Clerk is respectfully instructed to terminate the pending motions (Docs. 215 and 223) and close this case.

SO ORDERED:

Dated: New York, New York
      August 17, 2020

_____
Philip M. Halpern
United States District Judge